Brian J. Porter, Bar Number 10569
HALLIDAY, WATKINS & MANN, P.C.
Attorneys for U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone: 801-355-2886
Facsimile: 801-328-9714
Email: brian@hwmlawfirm.com
File No.: 54480

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

|  |  |
|---|---|
| In re:<br><br>**KENNETH ALLEN RYEN aka ROCKY RYEN AND SHANNON L RYEN**<br><br>Debtors. | Chapter 13<br><br>Case No.  18-20590 TLM |

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## (REAL PROPERTY)

U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust

("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic

stay with respect to certain real property of the Debtors having an address of 1147 N. 12th Street,

Coeur D'Alene, ID 83814 (the "Property").  In support of this Motion, Movant respectfully

states:

1.      A petition under Chapter 13 of the United States Bankruptcy Code was filed with

respect to the Debtors on September 18, 2018**.**

2.      A Chapter 13 Plan was confirmed on February 1, 2019.

3.      The Debtors, have executed and delivered or are otherwise obligated with respect

to that certain promissory note in the original principal amount of $37,500.00 (the

"Note").  A copy of the Note is attached hereto as Exhibit "A". Movant is an entity

entitled to enforce the Note.  A Loan Modification Agreement ("Loan Modification") was effective on May 1, 2008.  A copy of the Loan Modification is attached hereto as Exhibit "B"

4.      As evidenced by the assignments, endorsements, and/or allonges attached to the Note, the Note has been specially endorsed to Movant.  Movant is an entity entitled to enforce the Note because Movant is in possession, either directly or through the use of an authorized agent and/or document custodian, of the specially endorsed Note.

5.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtors under and with respect to the Note and the Deed of Trust are secured by the Property.  A copy of the recorded Deed of Trust is attached hereto as Exhibit "C".  Movant is entitled to enforce the Note and foreclose on the Deed of Trust.

6.      All rights and remedies under the Deed of Trust have been assigned to the Movant pursuant to that certain assignment of deed of trust, a copy of which is attached hereto as Exhibit "D".

7.      As of May 24, 2019, the outstanding amount of the Obligations less any partial payments or suspense balance is $66,463.30.

8.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred legal fees and costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

9.      The following chart sets forth the number and amount of postpetition payments

due pursuant to the terms of the Note that have been missed by the Debtors as of May 24,

2019:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 8 | October 1, 2018 | May 1, 2019 | $613.06 | $4,904.48 |
| Less postpetition partial payments (suspense balance): | | | | ($0.00) |

**Total: $4,904.48**

In addition, Debtors are obligated to make ongoing monthly payments, pursuant to the

express terms of the Note and Deed of Trust that have or will accrue after May 1, 2019.

A copy of the current post-petition payment history is attached as Exhibit "E".

10.     The estimated market value of the Property is $150,000.00.  The basis for such

valuation is Debtors' filed Schedule A/B: Property.

11.     Upon information and belief, the aggregate amount of encumbrances on the

Property listed in the Schedules or otherwise known, including but not limited to the

encumbrances granted to Movant, is $66,463.30

12.     Cause exists for relief from the automatic stay for the following reasons:

(a)     The fair market value of the Property is declining and payments are not

being made to Movant sufficient to protect Movant's interest against that decline.

(b)     Pursuant to 11 U.S.C. § 362 (d)(1), there is cause for relief from stay,

including lack of adequate protection of an interest in property of such party in

interest; and pursuant to § 362(d)(2)(B), the Property is not necessary for an

effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the

stay and granting the following:

1.     Relief from the stay for all purposes allowed by law, the Note, the Deed of Trust,

and applicable law, including but not limited allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4.      For such other relief as the Court deems proper.


                        DATED this 17th day of June, 2019


                        /s/ Brian J. Porter_____
                        Brian J. Porter
                        Attorney for Movant

## NOTICE OF MOTION

TO:    THE DEBTORS, THE DEBTORS' ATTORNEY, THE TRUSTEE, AND ANY OTHER
PARTY IN INTEREST

YOU ARE HEREBY NOTIFIED that U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust has filed its Motion for Relief from Stay.  Within twenty (20) days of the date of this notice, U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust, its successors in interest, agents, assignees, and/or assignors, shall ask the Court for an Order Granting Relief from the Automatic Stay provisions of 11 U.S.C. § 362(a) to annul and terminate the Stay as requested in the Motion, unless a party to this proceeding opposes the Motion for Relief from Stay filed by U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust by filing and serving on the moving party a written objection thereto within seventeen (17) days of filing the Motion.  The objection shall reasonably identify those matters contained in the Motion which are to be at issue, and any other basis of opposition to the Motion.  Absent the filing of a timely response, the Court may grant the relief sought without a hearing.  A final hearing, if any, shall commence not later than thirty (30) days after the conclusion of a preliminary hearing.  Failure to schedule a hearing and notify all parties, including U.S. Bank Trust National Association, as Trustee of the Lodge Series III Trust, shall preclude further objections to this Motion for Relief from Stay.

YOU ARE FURTHER NOTIFIED that pursuant to Rule 4001.2 of the Local Bankruptcy Rules and 11 U.S.C § 362(e), thirty days after a request under § 362(d) for relief from the stay of any act against property of the estate under subsection § 362(a), such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection § 362(d).  In addition, as required by Local Bankruptcy Rule 4001.2(d)(3), if an objection is filed to this motion, the objection must be served upon the Movant and upon all parties receiving service of the motion.  In accordance with Local Bankruptcy Rule 4001.2(e)(1), any party opposing a motion for stay relief must contact the Court's calendar clerk to schedule a preliminary hearing.  At the time of the filing the objection to a motion, the objecting party shall file and serve a notice of such hearing.

Dated: June 17, 2019

/s/ Brian J. Porter
Brian J. Porter
Attorney for Movant

CERTIFICATE OF SERVICE OF
MOTION FOR RELIEF FROM STAY

I HEREBY CERTIFY that I served a true and correct copy of the above-listed claimant's
Motion for Relief from Stay and the Notice of Motion on the individuals listed below by hand
delivering, mailing, with the correct postage thereon, or through electronic notification to those
parties registered with the U.S. Courts District of Idaho CM/ECF system, on the June 17, 2019.

Kenneth Allen Ryen and Shannon L Ryen
1147 N 12th St
Coeur D`Alene, ID 83814
Debtors
VIA U.S. MAIL

Cameron Lee Phillips
924 Sherman Ave
Coeur d'Alene, ID 83814
Debtors' Attorney
VIA ECF

C. Barry Zimmerman
601 Sherman Ave Ste 5
POB 1240
Coeur d'Alene, ID 83816
Chapter 13 Trustee
VIA ECF

United States Trustee
P.O. Box 1315
Coeur D Alene, ID 83816
VIA ECF

/s/  Brian J. Porter_____
Brian J. Porter
Attorney for Movant

# EXHIBIT "A"

Prepared by: D. GUERRERO

LOAN #: ███████

# NOTE

JUNE 19, 2003
[Date]

COEUR D'ALENE
[City]

IDAHO
[State]

1147 N. 12TH STREET, COEUR D'ALENE, ID 83814
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   37,500.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
FULL SPECTRUM LENDING, INC.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 10.750   %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the   FIRST   day of each month beginning on
AUGUST 01, 2003   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JULY 01,   2033   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 350.06

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."
Except as provided below, I may make a Full Prepayment or a Partial Prepayment without paying any penalty. If I make a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full or a Partial Prepayment at any time. However,
☐ I may prepay this Note in full at any time without penalty.
☒ If within the first SIXTY   months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original Principal amount of this loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original Principal amount of the loan.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

● BC - IDAHO FIXED RATE NOTE
2D5661ID (10/02)

Page 1 of 3

Initials: 



LOAN #: ▮▮▮▮▮

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. APPLICABLE LAW

I agree that this agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the real property is located. If a law, which applies to this loan and sets maximum loan charges is finally interpreted so that the interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such interest or other charge shall be reduced by the amount necessary to reduce the interest or other charge to the permitted limit; and (b) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment, but in no event will a prepayment charge be assessed if the Note Holder chooses to reduce my Principal balance by applying such excess amounts.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LOAN #: █████████

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Kenneth A. Ryen_____ (Seal)
KENNETH A RYEN                                    -Borrower

_Shannon Ryen_____ (Seal)
SHANNON RYEN                                      -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

[Sign Original Only]

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

BY_____
David A. Spector
Managing Director

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS
WITHOUT RECOURSE
FULL SPECTRUM LENDING, INC.

BY_____
David A. Spector
Managing Director
Countrywide Home Loans, Inc.
as Attorney-in-Fact for Full Spectrum Lending, In

● BC - IDAHO  FIXED RATE NOTE
 2D8669ID - (10/02)

Prepared by: D. GUERRERO

**FULL SPECTRUM LENDING, INC.**
BRANCH #0000843
1515 WALNUT GROVE RM843-2
ROSEMEAD, CA 91770-
(800)932-8896
(800)929-9690

DATE:            06/19/2003
BORROWER: KENNETH A RYEN
CASE #:
LOAN #:        LOAN #:
PROPERTY ADDRESS: 1147 N. 12TH STREET
                 COEUR D'ALENE, ID 83814

# ADDENDUM TO NOTE

This Addendum to Note ("Addendum") amends, supplements and constitutes a part of the terms of my Note dated 06/19/2003 . The provisions of this Addendum provide that I will receive Interest Rate Reductions if I make Timely Payments during specified Eligibility Periods. The terms and conditions I must meet to qualify for these Interest Rate Reductions are described below.

1.    **Definitions.** For purposes of this Addendum, the following definitions apply:

   a.    **Eligibility Periods** means consecutive twelve-month periods, the first of which is the twelve-month period beginning with the month in which my first monthly payment is due.

   b.    **Interest Rate Reduction** means an adjustment to the interest rate on my Note which decreases my interest rate by THREE-EIGHTHS percent ( 0.375 %) below my interest rate in effect immediately preceding such adjustment.

   c.    **Late Charge Date** means the date on which a late charge will be assessed as provided in my Note.

   d.    **Payment in Full** means a payment of all amounts due monthly under the terms of my Note and Security Instrument, including any escrow items, late charges, or other charge or amount imposed under the terms of my Note and Security Instrument.

   e.    **Timely Payment** means a monthly Payment in Full received by the Lender no later than the Late Charge Date.

   Capitalized terms used, but not defined in this Addendum, shall have the meaning given to them in the Note.

2.    **Number of Eligibility Periods.** This Addendum provides for FOUR (4)    Eligibility Periods.

3.    **Interest Rate Adjustments.** If I am eligible for an Interest Rate Reduction as of the end of an Eligibility Period, then beginning with the payment due in the month following the end of that Eligibility Period my payment will be adjusted to reflect an Interest Rate Reduction.

   **Example:** The first Eligibility Period covers the first twelve (12) payments on my loan. If I am eligible for an Interest Rate Reduction, then beginning with the 13th payment my interest rate will be reduced by THREE-EIGHTHS percent ( 0.375 %).

4.    **Effect of Interest Rate Adjustments.** Each time I receive an Interest Rate Reduction, my reduced interest rate will remain in effect for the balance of the term of my Note unless I qualify for additional Interest Rate Reductions during any subsequent Eligibility Periods. If I qualify for an Interest Rate Reduction in all FOUR (4)    Eligibility Periods, then my interest rate after the end of my last Eligibility Period will be one and one-half percent ( 1.5 %) below my initial interest rate as stated in Paragraph 2 of my Note.

5.    **Eligibility Conditions for Interest Rate Reduction.** If I meet each of the following terms and conditions during an Eligibility Period, I will be eligible for an Interest Rate Reduction after the end of that Eligibility Period:

   a.    **No Default.** At the beginning of the Eligibility Period, and continuously during the Eligibility Period, I must not be in default in any of my obligations to the Lender under the Note or Security Instrument (including, but not limited to, my obligation to maintain insurance on the collateral property and to pay all amounts due in accordance with the terms of my Note and Security Instrument).

   b.    **Payments in Full.** All of my monthly payments during an Eligibility Period must be Payments in Full. I will not be eligible for an Interest Rate Reduction if any monthly payment I make during an Eligibility Period is not a Payment in Full. Each of my payments during the Eligibility Period must be for the full amount that is due as shown on my monthly statement or payment coupon.

♣ BC - Addendum to Note
2D491IU6 (10/96)

c.  **Timely Payments.** (i) I will qualify for an Interest Rate Reduction if all of my monthly payments during an Eligibility Period are Timely Payments, except that I may make no more than one payment in an Eligibility Period after the Late Charge Date but prior to my next payment due date, provided that such payment is not the twelfth (12th) payment due in an Eligibility Period. (ii) Each of my payments during an Eligibility Period must be received by the Lender at the address specified by the Lender. (iii) If the Lender receives my payment before the Late Charge Date, but the payment instrument is subsequently returned to the Lender unpaid (whether for insufficient funds or otherwise), the payment will not be considered "received " by the Lender until final collection has been made by the Lender on the unpaid instrument or I replace it with another payment instrument which is not subsequently returned to the Lender unpaid. (iv) The Lender shall use its standard procedures for determining the date on which a payment is received. The date a payment is received is not the date I mail the payment or the postmark date on the envelope. A payment which is received by the Lender later than 5:00 p.m. is considered received the next Business Day. A Business Day means a day on which the Lender is regularly open for business and excludes Saturdays, Sundays or holidays. If the Lender's receipt of a payment is delayed for any reason such that the payment is not a Timely Payment, I will not be eligible for an Interest Rate Reduction for that Eligibility Period. I understand that it is my responsibility to ensure that my payments are received by the Lender on or before the Late Charge Date.

6.  **Payment Adjustment Notice.** If I am eligible to receive an Interest Rate Reduction the Lender will adjust my monthly payment to reflect the Interest Rate Reduction and will give me notice of my new payment amount prior to my next payment due date.

7.  **Failure to Qualify for an Interest Rate Reduction.** If I do not qualify for an Interest Rate Reduction during an Eligibility Period, no adjustment will be made to my interest rate after the end of that Eligibility Period. If I have not qualified for an Interest Rate Reduction during an Eligibility Period, the period for determining my eligibility for Interest Rate Reductions shall not be extended. My last Eligibility Period will end in the forty-eighth (48th) month of my loan, whether or not I have qualified for any Interest Rate Reduction in prior Eligibility Periods.

8.  **No Other Rate Adjustments.** There will be no reductions in or adjustments to my interest rate other than those described above.

9.  **Late Charges; Reporting to Credit Reporting Agencies.** If I fail to make each monthly payment to the Lender before the Late Charge Date, I will be assessed a late charge as provided in my Note. Further, if I fail to make each of my monthly payments to the Lender on or before the payment due date specified in Paragraph 3 of my Note, the Lender may report my delinquency to a consumer reporting agency.

10.  **No Change to Other Terms of Note or Security Instrument.** Except for the Interest Rate Reduction feature described above, all of the terms and conditions of my Note and Security Instrument remain in full force and effect, including without limitation any prepayment penalty which may be a condition of my loan.

By signing below, I acknowledge that I have read the above terms and conditions and that I understand them and agree to them.

_Kenneth a Ryen_                                                6-18-03
Borrower KENNETH A RYEN                                          Date

_Shannon Ryen_                                                  6-19-03
Borrower   SHANNON RYEN                                         Date

_____                                _____
Borrower                                                        Date

_____                                _____
Borrower                                                        Date

# EXHIBIT "B"

RECORDING REQUESTED BY:
Countrywide Home Loans Servicing LP
Attn Home Retention Division: SV-HRD S-L
4500 Amon Carter Blvd.
Fort Worth, TX 76155

Loan #: ▉▉▉▉▉▉▉

---------------------------------------------------FOR INTERNAL USE ONLY---------------------------------

## LOAN MODIFICATION AGREEMENT
### (Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 16th day of March 2009, between KENNETH A RYEN,   and Countrywide Home Loans Servicing LP (Lender), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the Security Instrument), dated the 19th day of June 2003 and in the amount of $37,500.00 and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as in the 'Property', located at 1147 N. 12TH STREET, COEUR D'ALENE, ID 83814.

SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1   As of the 1st day of May 2009, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") is U.S. $37,220.03 consisting of the amount(s) loaned to the Borrower by the Lender which may include, are not limited to, any past due principal payments, interest , fees and/or costs capitalized to date.

2   The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance at the yearly rate of (See Attached Addendum) from the 1st day of April 2009. The Borrower promises to make monthly payments of principal and interest of U.S. (See Attached Addendum) beginning on the 1st day of May 2009,  and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on the 1st day of July 2033 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3   The Borrower will make such payments at 4500 Amon Carter Blvd., Fort Worth, TX 76155 or at such other place as the Lender may require.

4   Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5   In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as Documents. Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing

_Kenneth a Ryen_                                    _3-24-09_
KENNETH A RYEN                                          Dated

DOLORES E. ADAMS
STATE OF IDAHO
NOTARY — • — PUBLIC

STATE OF   _Idaho_
COUNTY OF  _Kootenai_
On  _March 24-2009_  Before  _Dolores E. Adams_
Notary Public, personally appeared   _Kenneth A. Ryen_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.   _Dolores E. Adams_
                                      Signature

CHLP Loan#  ▉▉▉▉▉                                  Page 1 of 2

******************************************************************************************

Countrywide Home Loans Servicing LP

By:                                                                          Dated:

_Lisa Middleton_                                               4·15·09

STATE OF _____

COUNTY OF _____

On _____ Before _____

Notary Public, personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature

CHLP Loan#     ▮▮▮▮▮                                    Page 2 of 2

Countrywide Home Loans Servicing LP

By: _Kenneth A Ryen_

Dated: _3-24-09_

STATE OF _Idaho_

COUNTY OF _Kootenai_
On _March 24, 2009_ Before _Delores E. Adams_
Notary Public, personally appeared _Kenneth A. Ryen_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Delores E. Adams_
Signature

```
DOLORES E. ADAMS
STATE OF IDAHO
NOTARY — • — PUBLIC
```



CHLP Loan# ██████

Date:
RE: CHLP Loan#
Mortgagor:        KENNETH A RYEN
Property Address:  1147 N. 12TH STREET
                   COEUR D'ALENE, ID 83814

March 16, 2009

Please Return to:
Attn Home Retention Division: SV-HRD S-L
4500 Amon Carter Blvd.
Fort Worth, TX 76155

## STEP RATE LOAN MODIFICATION ADDENDUM
## TO LOAN MODIFICATION AGREEMENT

The Step Rate Loan Modification Agreement Addendum (the "Addendum") is made this 16th day of March 2009, and is incorporated into and shall be deemed a part of that certain Loan Modification Agreement of even date herewith (the "Agreement") between KENNETH A RYEN, and Countrywide Home Loans Servicing LP ("Lender"), which agreement amends and supplements that certain Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument").

### THIS ADDENDUM CONTAINS PROVISIONS PROVIDING FOR SCHEDULED INCREASES IN THE INTEREST RATE AND MONTHLY PAYMENT

In consideration of the mutual promises and agreements exchanged and for good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Agreement, Security Instrument or the promissory note (the "Note"), except as specifically provided for herein):

**1.  Interest Rate and Monthly Payment Increases.**

Notwithstanding anything to the contrary contained in the Note or referenced in the Agreement, the monthly principal and interest payment shall be calculated as follows:

The interest rate used to determine the monthly principal and interest payment shall change on the 1st day of April 2009 and on that day of every twelfth month thereafter (each such date, a "Change Date"), with the last such change date occurring on the 1st day of April 2012 at which time the interest rate and monthly payment will adjust in accordance with the Note, Adjustable Rate Rider and/or any other loan document that is affixed to or incorporated into the Note and Rider and provides for, implements or relates to any change or adjustment in the interest rate and monthly payment amount under the Note.

a)   The First Change Date shall occur on the 1st day of April 2009 at which time the interest rate shall be 8.375%. The monthly principal and interest payment shall be  $299.32 and shall be due and payable on 1st day of May 2009 and continuing thereafter on the same day of each succeeding month until 1st day of April 2010.

b)   The Second Change Date shall occur on the 1st day of April 2010 at which time the interest rate shall be 9.375%. The monthly principal and interest payment shall be $323.86 and shall be due and payable on 1st day of May 2010 and continuing thereafter on the same day of each succeeding month until 1st day of April 2011.

c)   The Third Change Date shall occur on the 1st day of April 2011 at which time the interest rate shall be 10.375%. The monthly principal and interest payment shall be  $348.63 and shall be due and payable on 1st day of May 2011 and continuing thereafter on the same day of each succeeding month until 1st day of April 2012.

Thereafter, the interest rate and monthly principal and interest payment shall adjust in accordance with the Note, Adjustable Rate Rider and/or any other loan document that is affixed to or incorporated into the Note and Rider and provides for, implements or relates to any change or adjustment in the interest rate and monthly payment amount under the Note until such time as the principal and interest due under the Note are paid in full. If on 1st day of July 2033 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by the Agreement and this Addendum, the Borrower shall pay these amounts in full on the Maturity Date.

LENDER:                                          BORROWER:

Countrywide Home Loans Servicing LP

_Signature_                                      _Kenneth a Ryen_

Date  4-15-09                                    KENNETH A RYEN

Date _____                             _____

CHLP Loan#                                        Page 1 of 1

# EXHIBIT "C"

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
DESIREE GUERRERO

STATE OF IDAHO
COUNTY OF KOOTENAI
AT THE REQUEST OF———
First-American-Title-Company
2003 JUN 24  P 1: 31

DANIEL J. ENGLISH

DEPUTY

FEES_____  36

**1809160**

———— [Space Above This Line For Recording Data] ————

RYEN
[Escrow/Closing #]

[Doc ID #]

## DEED OF TRUST



### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  JUNE 19, 2003          , together with all Riders to this document.
(B) "Borrower" is
KENNETH A RYEN, AND SHANNON RYEN , HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
FULL SPECTRUM LENDING, INC.
Lender is a CORPORATION
organized and existing under the laws of CALIFORNIA
Lender's address is
4500 Park Granada, Calabasas, CA 91302
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is
FIDELITY NATIONAL TITLE INSURANCE COMPANY
15661 REDHILL AVE #200, TUSTIN, CA 92780
(E) "Note" means the promissory note signed by Borrower and dated  JUNE 19, 2003          . The Note states that Borrower owes Lender
THIRTY SEVEN THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 37,500.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  JULY 01, 2033          .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

**IDAHO**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

Page 1 of 11

Initials: K.A.R.
S.R.

Ⓥ  -6(ID) (0005).01    CHL (11/01)(d)    VMP MORTGAGE FORMS - (800)521-7291
CONV/VA

Form 3013  1/01





1809160

DOC ID #: ▮▮▮▮▮▮▮▮

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ Second Home Rider
☐ Balloon Rider      ☐ Planned Unit Development Rider      ☐ 1-4 Family Rider
☐ VA Rider      ☐ Biweekly Payment Rider      ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY      of      KOOTENAI      :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:                               which currently has the address of
                1147 N. 12TH STREET, COEUR D'ALENE        ,
                              [Street/City]

Idaho     83814      ("Property Address"):
         [Zip Code]

Initials: _Kal_ / _SR_

1809160

DOC ID #: ▉▉▉▉▉▉▉

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment

Initials: *[handwritten initials]*

**1809160**

DOC ID #: ▮▮▮▮▮▮▮

within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that

Initials: _K.A.L._
_S.R._

-6(ID) (0005).01    CHL (11/01)    Page 4 of 11    Form 3013 1/01

1809160

DOC ID #: ▮

Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for

1809160

DOC ID #: ████████

enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has

Initials: _K.G.R._

VMP®-8(ID) (0005).01      CHL (11/01)      Page 6 of 11      Form 3013  1/01

1809160

had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

1809160

DOC ID #: ▮▮▮▮▮▮

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and

Initials: _KAR_
_JP_

○ -6(ID) (0005).01    CHL (11/01)    Page 8 of 11    Form 3013  1/01

1809160

DOC ID #: ████████████

Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums

Initials: _KAR_
_SP_

1809160

DOC ID #: ▉▉▉▉▉

secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Area and Location of Property.** Either the Property is not more than 40 acres in area or the Property is located within an incorporated city or village.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                   KENNETH A. RYEN                    -Borrower

_____    _____ (Seal)
                                   SHANNON RYEN                       -Borrower

                                   _____ (Seal)
                                                                      -Borrower

                                   _____ (Seal)
                                                                      -Borrower

1809160

**STATE OF IDAHO,** Kootenai       DOC ID #: ████████   County ss:

On this 16th day of June, 2003 , before me,

Rhonda Bomar

a Notary Public in and for said county and state, personally appeared

Kenneth A. Ryen & Shannon Ryen

known or proved to me to be the person(s) who executed the foregoing instrument, and acknowledged to me
that he/she/they executed the same.

In witness whereof I have hereunto set my hand and affixed my official seal the day and year in this
certificate first above written.

Notary Public residing at: CDA

Comm Exp: 7-11-2006

1809160

Attached Exhibit "A"

Lot 1, Block 2,  Whitla Addition to Coeur d'Alene , according to the plat recorded in Book D of
Plats, Page 64, records of Kootenai County, Idaho.

# EXHIBIT "D"

1912796



STATE OF IDAHO
COUNTY OF KOOTENAI
AT THE REQUEST OF
✳ Countrywide

2004 NOV 15 P 12: 45

DANIEL J. ENGLISH

DEPUTY

FEES _____ 3.00

Recording requested by
Full Spectrum Lending, Inc.
When recorded mail to:
Countrywide Home Loans Inc
1800 Tapo Canyon Road    SV-79
Simi Valley, CA 93063
Attn: Assignment Unit

CORPORATION ASSIGNMENT OF DEED OF TRUST
Doc. ID#
Commitment# ▮▮▮▮▮▮▮

For value received, the undersigned, Full Spectrum Lending, Inc., 4500 Park
Granada, Calabasas, CA  91302-1613, hereby grants, assigns and transfers to:
COUNTRYWIDE HOME LOANS, INC.
1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063

All beneficial interest under that certain Deed of Trust dated  6/19/03,
executed by: KENNETH A RYEN, Trustor as per TRUST DEED recorded as Instrument
No. 1809160 on 6/24/03 in Book          Page          of official
records in the County Recorder's Office of KOOTENAI County, IDAHO.
  The Trustee is FIDELITY NATIONAL TITLE INSURA.
Tax Parcel = ▮▮▮▮▮▮,   KOOTENAI COUNTY TREASURER
Original Mortgage $37,500.00
1147 N. 12TH STREET, COEUR D'ALENE, ID 83814

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Deed of Trust.

Full Spectrum Lending, Inc.

By _____
Heidi Smalley, Assistant Secretary

Dated: 10/12/2004
State of California
County of Ventura

On 10/12/2004 before me, Antoniette Barrientos , personally appeared Heidi
Smalley, personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in
his/her/their duly authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the persons acted, executed the instrument. Witness my hand and official
seal.

Signature: _____
Antoniette Barrientos

ANTONIETTE BARRIENTOS
COMM. #1414428
NOTARY PUBLIC – CALIFORNIA
VENTURA COUNTY
My Commission Exp. Apr 29, 2007

Prepared by: JoAnn Norman
1800 Tapo Canyon Rd SV-79
Simi Valley, CA 93063
Phone#: (805) 577-4766   Ext: 4766



Recording Requested By:
Bank of America, N.A.
Prepared By: Noor Sadruddin

When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

DocID#
Tax ID:
Property Address:
1147 N 12th St
Coeur D Alene, ID 83814-4459

CLIFFORD T. HAYES    1P   2414002000    Page 1 of 1
KOOTENAI COUNTY RECORDER
DRS      Date 06/10/2013  Time 11:41:00
REQ OF CORELOGIC INFORMATION SOLUTIONS
RECORDING FEE: $10.00

2414002000  XA

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 does hereby grant, sell, assign, transfer and convey unto NATIONSTAR MORTGAGE, LLC whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
                          FOR FULL SPECTRUM LENDING, INC.

Original Borrower(s):     KENNETH A RYEN, AND SHANNON RYEN, HUSBAND AND WIFE

Original Trustee:         FIDELITY NATIONAL TITLE INSURANCE COMPANY

Date of Deed of Trust: 6/19/2003      Original Loan Amount: $37,500.00

Recorded in Kootenai County, ID on: 6/24/2003, book N/A, page N/A and instrument number 1809160·

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
5/28/13

COUNTRYWIDE HOME LOANS, INC.

By: _____
         Tanya Henry
         Assistant Vice President

State of TX, County of _Dallas_

On _5-28-2013_ , before me, _Debra A. Oliveria_ , a Notary Public, personally appeared _Tanya Henry_ _Assistant Vice President_ of COUNTRYWIDE HOME LOANS, INC. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_Debra A. Oliveria_
Notary Public: _Debra A. Oliveria_
My Commission Expires: _3-7-2014_

DEBRA A. OLIVERIA
Notary Public
State of Texas
My Comm. Exp. 03-07-2014

JIM BRANNON        1  P    2580364000
KOOTENAI COUNTY RECORDER
MRR                1/24/2017 4:09 PM
REQ OF ORDMS

Recording Requested By:
Nationstar Mortgage

RECORDING FEE: $10.00          XA
Electronically Recorded

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019

### CORPORATE ASSIGNMENT OF DEED OF TRUST

Kootenai, Idaho
SELLER'S SERVICING #              "RYEN"

Date of Assignment: January 17th, 2017
Assignor: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX  75019
Assignee: MTGLQ INVESTORS, L.P at 200 WEST ST, NEW YORK, NY  10282-2102

Executed By: KENNETH A RYEN, AND SHANNON RYEN, HUSBAND AND WIFE  To: FULL SPECTRUM
LENDING, INC.
Date of Deed of Trust: 06/19/2003 Recorded: 06/24/2003 as Instrument No.: 1809160 In the County of Kootenai,
State of Idaho.

Property Address: 1147 N. STREET, COEUR D'ALENE, ID  83814

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of
Trust having an original principal sum of $37,500.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to
the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the
day and year first above written:

   NATIONSTAR MORTGAGE LLC
On January 17th, 2017

By: _____
MOHAMED HAMEED, Assistant Secretary

STATE OF Texas
COUNTY OF Dallas

On January 17th, 2017, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas,
personally appeared MOHAMED HAMEED, Assistant Secretary, personally known to me to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
COLLEEN BARNETT
Notary Expires: 11/30/2019 #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)

KOOTENAI COUNTY RECORDER
4/18/2019 9:02 AM
MMS
REQ OF MERIDIAN ASSET SERVICES - API

RECORDING FEE: $13.00          XA
Electronically Recorded

Recording Requested By:

Prepared By: Audrey B Trumble
855-369-2410
When recorded mail to:

Tax ID:
Property Address:
1147 N. 12TH STREET
COEUR D ALENE, ID 83814

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 2001 Ross Avenue, Suite 2800, Dallas, TX 75201 does hereby grant, sell, assign, transfer and convey unto U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST whose address is 7114 E Stetson Dr., Suite 250, Scottsdale, AZ 85251 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Beneficiary:          FULL SPECTRUM LENDING, INC
Original Borrower(s):   KENNETH A RYEN, AND SHANNON RYEN, HUSBAND AND WIFE
Original Trustee:      FIDELITY NATIONAL TITLE INSURANCE COMPANY
Date of Deed of Trust: 6/19/2003      Original Loan Amount: $37,500.00
Recorded in Kootenai County, ID on: 6/24/2003, book N/A, page N/A and instrument number 1809160

**SEE EXHIBIT "A" ATTACHED**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**MAR 1 2 2019**

MTGLQ INVESTORS, L.P.

By: _____
Andrea Rhinehardt, Vice President

State of TX, County of Dallas

On **MAR 1 2 2019** , before me, _____ Sindy Garcia a Notary Public, personally appeared Andrea Rhinehardt, Vice President of MTGLQ INVESTORS, L.P. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: _____ Sindy Garcia
My Commission Expires :

**APR 1 0 2021**

SINDY GARCIA
Notary Public, State of Texas
Comm. Expires 04-10-2021
Notary ID 131081908

**EXHIBIT "A"**

Lot 1, Block 2,  Whitla Addition to Coeur d'Alene , according to the plat recorded in Book D of
Plats, Page 64, records of Kootenai County, Idaho.

M BRANNON            3   P    2692899000
KOOTENAI COUNTY RECORDER
MMS              5/17/2019 9:08 AM
REQ OF MERIDIAN ASSET SERVICES - API

RECORDING FEE: $16.00          XA
Electronically Recorded

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Loan No

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE LODGE SERIES III TRUST**, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 6/19/2003
Original Loan Amount: $37,500.00
Executed by (Borrower(s)): KENNETH A RYEN & SHANNON RYEN
Original Trustee: **FIDELITY NATIONAL TITLE INSURANCE COMPANY**
Original Beneficiary: **FULL SPECTRUM LENDING, INC.**
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 1809160 in the Recording District of **KOOTENAI, ID**, Recorded on 6/24/2003.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **1147 N. 12TH STREET, COEUR D'ALENE, IDAHO 83814**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **5/9/2019**

US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT

By: **MATTHEW KRUEGER**
Title: **VICE PRESIDENT**

Witness Name: **JOHN GASKIN**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of     **FLORIDA**
County of    **PINELLAS**

On **5/9/2019**, before me, **RYAN M. MAUCK**, a Notary Public, personally appeared **MATTHEW KRUEGER,
VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US
BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, personally
known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the
laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify MATTHEW
KRUEGER, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **RYAN M. MAUCK**
My Commission expires: **01/16/2022**

RYAN M. MAUCK
Commission # GG 175956
Expires January 16, 2022
Bonded Thru Budget Notary Services

**EXHIBIT "A"**

Lot 1, Block 2, Whitla Addition to Coeur d'Alene, according to the plat recorded in Book D of Plats, Page 64, records of Kootenai County, Idaho.

# EXHIBIT "E"

## SN Servicing Corporation

### Loan History - General

Loanid:    Borrower: RYEN    Telephone:    SSN:

| Effective Date | Transaction Date | Due Date | Transaction Description | Batch Desc | Sub Batch Code | Batch Id | Trans. Amt | Principal Amount | Principal Balance | Arrearage/ Forbearance Prin | Interest Amount | Unapplied Amount | Unapplied Balance | Escrow Amount | Escrow Balance | Late Charge Amt | Late Charge Balance | Assistance Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/29/2018 | 11/29/2018 | 8/1/2015 | New Loan | | 0 | 0 | $.00 | $40,522.89 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 |
| 11/30/2018 | 11/30/2018 | 8/1/2015 | Other Fee Assessment | | 96 | 0 | ($3,882.89) | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 |
| 11/30/2018 | 11/30/2018 | 8/1/2015 | Other Fee Assessment | | 212 | 0 | ($97.67) | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 | $.00 |
| 11/30/2018 | 11/30/2018 | 8/1/2015 | Escrow Adjustment | | 0 | 0 | ($5,689.63) | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | ($5,689.63) | ($5,689.63) | $.00 | $.00 | $.00 |
| 12/27/2018 | 12/27/2018 | 8/1/2015 | Tax Bill 1 Disbursement | 40-eso-12272018-04 | 30 | 7897 | ($665.69) | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | ($665.69) | ($6,355.32) | $.00 | $.00 | $.00 |
| 1/17/2019 | 1/17/2019 | 1/1/2019 | Late Charge Assess | | 0 | 0 | ($21.72) | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,355.32) | ($21.72) | $21.72 | $.00 |
| 2/15/2019 | 2/15/2019 | 8/1/2015 | Investor Loan Sale | | 0 | 15225 | $.00 | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,355.32) | $.00 | $21.72 | $.00 |
| 2/15/2019 | 2/15/2019 | 8/1/2015 | Inv Loan Purchase | | 0 | 15225 | $.00 | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,355.32) | $.00 | $21.72 | $.00 |
| 2/17/2019 | 2/17/2019 | 2/1/2019 | Late Charge Assess | | 0 | 0 | ($21.72) | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,355.32) | ($21.72) | $43.44 | $.00 |
| 3/6/2019 | 3/6/2019 | 8/1/2015 | Prepetition Unapplied Pmt | BK Check EKA (3000-EXBK-BC) | 0 | 17633 | $2,108.45 | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $2,108.45 | $.00 | ($6,355.32) | $.00 | $43.44 | $.00 |
| 3/6/2019 | 3/6/2019 | 8/1/2015 | Prepetition Unapplied Pmt | 45-PA | 0 | 17494 | ($2,108.45) | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,355.32) | $.00 | $43.44 | $.00 |
| 3/6/2019 | 3/6/2019 | 8/1/2015 | Other Fee Payment | 45-PA | 96 | 17494 | $2,108.45 | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,355.32) | $.00 | $43.44 | $.00 |
| 3/17/2019 | 3/17/2019 | 3/1/2019 | Late Charge Assess | | 0 | 0 | ($21.72) | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($6,355.32) | ($21.72) | $65.16 | $.00 |
| 4/16/2019 | 4/16/2019 | 4/29/2019 | Insurance Premium Disbursement | HOI | 15 | 24251 | ($873.00) | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | ($873.00) | ($7,228.32) | $.00 | $65.16 | $.00 |
| 4/17/2019 | 4/17/2019 | 4/1/2019 | Late Charge Assess | | 0 | 0 | ($21.72) | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($7,228.32) | ($21.72) | $86.88 | $.00 |
| 5/17/2019 | 5/17/2019 | 5/1/2019 | Late Charge Assess | | 0 | 0 | ($21.72) | $.00 | $40,522.89 | $0.00 | $.00 | $.00 | $.00 | $.00 | ($7,228.32) | ($21.72) | $108.60 | $.00 |
| | | | Totals: | | | | ($9,209.03) | $40,522.89 | | | $.00 | $.00 | | ($7,228.32) | | ($108.60) | | $.00 |

Contains Customer Private Information - Handle securely.